ALFRED WOTKYNS SEYMOUR, as Administrator, etc., of
THOMAS WILLIAMS, Deceased, Respondent, v. THE
MECHANICS AND METALS NATIONAL BANK OF THE CITY
OF NEW YORK, Appellant.

First Department, February 10, 1922.

Executors and administrators — action by administrator with will
annexed to compel defendant bank to transfer on its books certain
shares of capital stock of bank, to whose assets and business
defendant remotely succeeded, to issue its own stock in lieu thereof
and to account for back dividends — pleadings — demurrer to reply
setting forth avoidances to Statute of Limitations pleaded in
answer overruled — laches — cause of action may be barred by
laches of those beneficially interested — if for long period during
life of executor named in will other persons were recognized as
lawful owners of stock in question, cause of action was barred
by statute — no cause of action if stock was transferred by executor
although bank failed to require surrender of certificate — if stock
was transferred without authority of executor, statute commenced
running at once whether he knew of transfer or not — Statute
of Limitations does not run against decedent's estate while there
is no representative in whom cause of action may become vested
— condition precedent for estate to tender surrender of stock
certificate and demand new stock and accounting for past
dividends — better pleading to allege expressly that estate had
been without administrator for period before appointment of
plaintiff although that fact may be inferred.

Where a complaint and reply alleged in substance that on the 8th day of
October, 1917, the plaintiff was appointed administrator with the will
annexed of the estate of one Williams who died in 1822 leaving a will
appointing one Cornell executor; that on the 19th day of August, 1823, a
certificate for sixty-seven shares of stock of the Mechanics Bank was
issued to said Cornell as such executor; that on the 26th day of January,
1852, Cornell died without having accounted as executor; that no account-
ing of the estate of Cornell has ever been had; that neither the estate of
Williams nor that of Cornell has ever been fully administered; that said
certificate remains an unadministered asset of the estate of Williams;
that said bank ceased to exist on the 1st day of January, 1855, and
another bank acquired its business and property under a plan whereby
the stockholders in the former bank became entitled to certain shares
in the new bank but that no stock was ever issued for said sixty-seven
shares in the former bank, that on the 6th day of October, 1865, the

latter bank was reorganized with similar provisions as to stockholders and that the estate of Williams became entitled to certain stock in the reorganized bank but that no stock was ever issued to it; that the last-mentioned bank went through a series of consolidations with other named banks until the defendant finally came into existence as a result of such consolidations; that from the year 1823 all the banks mentioned paid dividends on their stock but none of them ever paid any dividend on the certificate in question; that on the 5th day of November, 1917, the plaintiff tendered said certificate to the defendant and demanded that it issue shares of the defendant in place thereof and that the defendant account to him for all dividends upon the shares of stock of each of the banks " which were and are the property of said estate," which demands were refused, and the plaintiff demands judgment that the defendant be required to issue its own stock in exchange for said certificate and to account for all dividends from 1823 to the present, and the answer sets up, among other things, the Statute of Limitations, a demurrer to the avoidances pleaded in the reply to the defense of the Statute of Limitations was properly overruled.

The complaint should be sustained on the theory that it tends to show a cause of action which arose after the death of the executor of Williams, but did not fully accrue owing to the fact that there was no administrator with the will annexed in whom it could vest until the appointment of the plaintiff; but it must not be inferred that the legatees of Williams by failing to have a representative of the estate appointed could continue any such cause of action indefinitely, for any cause of action for the benefit only of those beneficially interested may become barred by their laches.

*It seems,* that if, as alleged by the defendant, all the capital stock of the original bank was issued and outstanding in the names of others and so remained from some time prior to 1837 until after the death of the executor of the Williams estate, fifteen or more years thereafter, and if during that time the stockholders of record were recognized as the lawful owners of all the capital stock, and dividends thereon were paid to them and the records of the bank did not show that any of the stock was outstanding in the name of the executor and no dividend was paid to him, any cause of action on the certificate in behalf of the estate accrued while Cornell was executor and that the Statute of Limitations ran against the same in his lifetime.

*It seems,* that if, as alleged in the answer, the certificate, if issued to the executor by the bank, was transferred by him and a certificate issued to another in its place, the estate would have no cause of action, even though the bank saw fit to recognize and enter the transfer without requiring the surrender of the certificate or retaining possession of it; and if the transfer was made without the authority of the executor, a cause of action in his favor at once accrued against the bank and the Statute of Limitations commenced running regardless of whether or not he had knowledge of the transfer.

On the theory that the executor of the Williams estate held and owned the certificate of stock as a valid certificate at the time of his death, whatever cause of action arose in behalf of the Williams estate, by reason of the transactions had at the time of the expiration of the charter of the original bank and the incorporation of the bank which succeeded to its business, did not arise until at or after the time of those transactions; and if at that time there was no representative of the Williams estate in whom the cause of action could become vested, it did not accrue until the appointment of such representative, and until that time no Statute of Limitations commenced to run. This is so, regardless of whether or not a demand or tender of surrender of the certificate of stock or an election to accept stock instead of the value of the stock was a condition precedent to the maintenance of the action, for if there was no one in a position to act for the estate, it could not perform any condition precedent to a cause of action. However, it was necessary for the estate, as a condition précedent to the enforcement of any cause of action it may have had, to tender a surrender of the certificate and to demand stock in the successor bank and any accrued dividends on the value of the stock, and since the existence of the certificate was not known to any one entitled to make the demand until 1913, the statute would not commence running until that time.

It would have been better pleading to have expressly alleged that there was no appointment of an administrator with the will annexed of the Williams estate after the death of the executor and prior to the appointment of the plaintiff, and that there was no one in existence during said period who could have made a demand, but these facts may fairly be inferred.

APPEAL by the defendant, The Mechanics and Metals National Bank of the City of New York, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 28th day of June, 1921, denying its motion to have its demurrer to the avoidances and partial avoidances pleaded in a second amended reply to its pleas of the Statutes of Limitations as defenses to the action sustained.

*Frank M. Patterson* [*James M. Beck* of counsel; *Frank M. Patterson, M. Mackenzie* and *C. F. Black* with him on the brief], for the appellant.

*Wellman, Smyth & Scofield* [*Elijah N. Zoline* of counsel; *Herbert C. Smyth, Roderic Wellman* and *Ralph W. Thomas* with him on the brief], for the respondent.

Laughlin, J.:

Under our system of practice and procedure, by which the courts may be called upon in advance of the trial to decide issues of law arising on the pleadings, we are often required to decide abstract propositions of law which, when the facts are fully developed on the trial, become quite immaterial and have no bearing on the final decision of the issues; and such very likely is the case presented by this appeal.

It is alleged in the complaint that on the 8th of October, 1917, plaintiff was appointed administrator with the will annexed of the estate of one Thomas Williams who died a resident of the county of New York in the year 1822, leaving a last will and testament, which was admitted to probate on the 21st of November, 1822, appointing Archibald Cornell his executor; that on the 19th of August 1823, a certificate for sixty-seven shares of the capital stock of the Mechanics Bank, a domestic banking corporation, incorporated by chapter 87 of the Laws of 1810, was issued by the bank to said Cornell as such executor; that on the 26th of January, 1852, Cornell died without having accounted as executor and leaving the estate wholly unadministered and that no accounting of the estate of Cornell has ever been had; that neither the estate of Williams nor that of Cornell has ever been fully administered and that said certificate still remains an unadministered asset of the estate of Williams. It is further alleged that the charter of said bank, as extended, expired on the 1st day of January, 1855, and that on that day the Mechanics Bank of the City of New York was incorporated as a domestic banking corporation and acquired the business and property of the former bank, and that under the plan of acquisition the stockholders of the former bank became entitled to certain shares in the Mechanics Bank of the City of New York in exchange for their stock in the former bank; that no stock was issued in place of the certificate for said sixty-seven shares of stock in the former bank so issued in the name of Cornell as executor, although the estate of Williams became the rightful owner of an equivalent number of shares of stock in the Mechanics Bank of the City of New York; that on the 6th of October, 1865, the Mechanics Bank of the City of New York was converted into a national banking

association under the name of the Mechanics National Bank of the City of New York and its former stockholders became entitled to certain shares of the capital stock of the said Mechanics National Bank and that the estate of Williams became the rightful owner of an equivalent proportion of said stock, but no stock was ever issued to it; that on the 17th of April, 1904, said Mechanics National Bank and the Leather Manufacturers National Bank were consolidated under the name of the former, and on the 29th of January, 1910, said Mechanics National Bank and the National Copper Bank of New York were consolidated under the name of the Mechanics and Metals National Bank of the City of New York, and on the 16th of May, 1914, the Mechanics and Metals National Bank and the Fourth National Bank were consolidated under the name of the Mechanics and Metals National Bank of the City of New York, which is the defendant herein. It is also alleged that from the year 1823, when said certificate was issued to Cornell as executor, down to the present time, the aforesaid banks respectively at various times have paid dividends on their capital stock, but that at no time has any of them paid any dividend on said certificate of stock to said Williams estate or to plaintiff; that on the 5th of November, 1917, plaintiff duly tendered said certificate of stock to the defendant for transfer and demanded that it issue to him a certificate for such number of shares of the defendant as are represented by the certificate, and that on the same day plaintiff demanded that the defendant account to him for all dividends accrued and unpaid upon the shares of stock of each of the banks " which were and are the property of said estate " and that each of said demands was refused. Plaintiff demands judgment that the defendant be required to transfer on its books the said sixty-seven shares of stock upon the surrender of the certificate and to issue therefor to the plaintiff a certificate for such number of shares of its stock as are represented by said certificate and requiring the defendant to account for all dividends accrued and unpaid on said shares of stock and their equivalent in said banks respectively from 1823 to the present time.

The answer puts in issue the allegations of the complaint with respect to the issuance and ownership of said certificate

for sixty-seven shares of stock in the original bank and with respect to the ownership or interest of the estate in any of the stock of the successor banks. It then interposes as first, second and third defenses respectively the six, ten and twenty-year Statutes of Limitations, and next alleges as fourth, fifth and sixth defenses that if any of the stock in the original bank was ever issued to the Williams estate, it was transferred by it to some other person prior to the year 1837, and that in that year all of the stock of the original bank was issued and outstanding and none of it then or since stood in the name of the Williams estate, and that these facts were known or should have been known to the executor; and on these facts it reasserts the pleas of the six, ten and twenty-year Statutes of Limitations. It is then alleged as a seventh defense that the capital stock of the original bank was issued and transferred as provided by law, and that if at any time any of it was owned by the Williams estate, it was transferred by it prior to 1837 and in that year all of the capital stock was outstanding in the names of others and ever thereafter so remained; that the records of the original bank as to stockholders prior to the year 1837 have been lost and defendant has been unable to obtain any information in regard to the stockholders prior thereto; that those interested in the Williams estate were aware of the fact that no such shares stood on the records of the banks in the name of the estate in 1837 or subsequent thereto; that no dividends were paid to the Williams estate, and that since 1837 none of the banks had any notice of a claim that it held stock in the original bank or was entitled to dividends thereon, and, therefore, the estate is barred by laches from asserting any right to dividends or as a stockholder. As eighth, ninth and tenth defenses it is alleged that the causes of action for dividends did not accrue within six, ten or twenty years respectively. The sufficiency of the defense of laches is not presented for decision for the reason that the reply merely joins issue on the facts pleaded in this defense and alleges no facts in avoidance or in partial avoidance thereof. It is highly probable that the defense of laches will figure prominently upon the trial. We find it necessary, as will be seen presently, to sustain the complaint on the theory that it tends to show a cause of action which arose after the

death of the executor but did not fully accrue, owing to the fact that there was no administrator with the will annexed in whom it could vest, until the appointment of the plaintiff; but it must not be inferred that we mean to imply that the legatees of Williams by failing to have a representative of the estate appointed to succeed the deceased executor could continue any such cause of action from generation to generation of their next of kin or legatees indefinitely until such time as some one beneficially interested in the claim saw fit to have a successor to the executor appointed. Plainly any cause of action for the benefit only of those beneficially interested may become barred by their laches.

If, as alleged by the defendant, all of the capital stock of the original bank was issued and outstanding in the names of others and so remained from some time prior to the year 1837 until after the death of the executor of the Williams estate fifteen or more years thereafter, and if, during that time, the stockholders of record were recognized as the lawful owners of all of the capital stock and dividends thereon were paid to them and the records of the bank did not show that any of the stock was outstanding in the name of the executor, and, as alleged in the complaint, no dividend was paid to him, it would seem that any cause of action on the certificate in behalf of the estate accrued while Cornell was executor and that the Statute of Limitations ran against the same in his lifetime, and if so, no action can now be maintained on the certificate. If, as alleged in the answer, the certificate, if issued to the executor by the bank, was transferred by him and a certificate issued to another in its place, the estate would have no cause of action, even though for some undisclosed reason the officials of the bank saw fit to recognize and enter the transfer upon the books of the bank without requiring the surrender of the outstanding certificate or retaining possession of it (See *Brisbane* v. *Delaware, L. & W. R. R.* Co., 94 N. Y. 204); and if the transfer was made without the authority of the executor, a cause of action in his favor at once accrued against the bank and the Statute of Limitations commenced running regardless of whether or not he had knowledge of the wrongful or unauthorized transfer. (*Glover* v. *National Bank of Commerce*, 156 App. Div. 247; 168 id. 903; affd., 219 N. Y. 618.)    *Glover* v. *National*

*Bank of Commerce* (*supra*) was an action similar to this brought in behalf of a stockholder of a bank against the bank, which had transferred the stock on a forged power of attorney, to compel it to recognize the plaintiff as the owner of the stock by issuing a new certificate or to pay the value thereof and to compel it to account for the dividends paid on his stock; and the plaintiff, in reply to the plea of the Statute of Limitations, alleged that neither the plaintiff, an administrator, nor her intestate was aware of the existence of the cause of action prior to six years before the commencement of the action and that the defendant fraudulently concealed the facts from her and her intestate until within six years of the commencement of the action and also that the defendant with respect to the shares acted as trustee and in a fiduciary capacity toward plaintiff and her intestate.    On a demurrer by the defendant to these pleas in avoidance, it was held that the bank did not act in a fiduciary capacity in the premises within the contemplation of section 410, subdivision 1, of the Code of Civil Procedure, requiring a demand in certain cases before the commencement of the action, and that the cause of action completely accrued the moment the shares were transferred and was barred by the Statute of Limitations.    That decision may govern the final determination of the issues herein, but the state of the pleadings is such that it is not decisive of the issue presented by the demurrer for the reason that the plaintiff by the reply in avoidance of the pleas of the Statutes of Limitations puts in issue these allegations with respect to what is shown by the records of the original bank concerning the ownership of its capital stock.    In view of such denials, the appeal cannot be decided on the assumption that the executor was not at all times a stockholder of record; nor can we say, as urged in behalf of the defendant, that this certificate was repudiated by the original bank by the non-payment of dividends thereon, for it does not appear when any dividend was declared or paid and, therefore, it cannot be held on that theory that during the life of the executor the Statute of Limitations had run against any right he had by virtue of the certificate of stock.    The appeal, therefore, must be decided on the theory that the executor of the Williams estate held and owned the certificate as a valid certificate of stock at the time of his

death. On that theory, whatever cause of action arose in behalf of the Williams estate, by reason of the transactions had at the time of the expiration of the charter of the original bank and the incorporation of the bank which succeeded to its business, did not arise until at or after the time of those transactions; and if at that time there was no representative of the Williams estate in whom the cause of action could become vested, it did not accrue until the appointment of such representative, and until that time no Statute of Limitations commenced to run. (Code Civ. Proc. § 415; *Dunning* v. *Ocean Nat. Bank*, 61 N. Y. 497; *Sanford* v. *Sanford*, 62 id. 553; *Bucklin* v. *Ford*, 5 Barb. 393; *American R. Co. of Porto Rico* v. *Coronas*, 230 Fed. Rep. 545; *Crapo* v. *City of Syracuse*, 183 N. Y. 395, 397, 400.) This is necessarily so regardless of whether or not a demand or tender of surrender of the certificate of stock or an election to accept stock instead of the value of the stock (*Taylor* v. *Earle*, 8 Hun, 1; 3 Cook Corp. [7th ed.] § 671) was a condition precedent to the maintenance of the action, for if there was no one in a position to act for the estate, it could not perform any condition precedent to a complete cause of action accruing; but I think it was necessary for the estate, as a condition precedent to the enforcement of any cause of action it may have had at law to tender a surrender of its certificate and to demand stock in the successor bank and any accrued dividends or the value of the stock, and since the existence of the certificate was not known to any one entitled to make the demand until 1913, the statute would not commence running until that time, for the successor bank held the stock to which the Williams estate became entitled under the terms of the agreement and the dividends, as agent, at least, for the estate within the provisions of section 410 of the Code of Civil Procedure. (See *Ganley* v. *Troy City National Bank*, 98 N. Y. 487.) It is contended in behalf of the defendant that it is not expressly alleged either in the complaint or in the reply that there was no appointment of an administrator with the will annexed of the Williams estate after the death of the executor and prior to the appointment of the plaintiff, and that this should have been expressly alleged in order to show that the cause of action did not accrue, and that it should also have been expressly alleged that there was no one in existence who

could have made a demand, if a demand was necessary. Although these facts are not expressly alleged and it would have been better pleading to have expressly alleged them (See *Benjamin* v. *DeGroot*, 1 Den. 157), I am of opinion that they may fairly be inferred and that the appeal should be decided on the theory that the plaintiff will be entitled to show them on the trial. Although I have discussed the point to some extent, it is unnecessary to decide whether a demand was a condition precedent to the maintenance of the action for there has been a proper demand upon the defendant and manifestly its liability, if any, does not depend on whether a demand was made on or a tender made to others who also are or may be liable. With respect to what took place at the time of the expiration of the charter of the original bank and the incorporation of the successor bank, plaintiff alleges generally in the reply that on or about the 1st of January, 1855, a majority of the officers, stockholders and directors of the original bank incorporated the successor bank and transferred to it all of the assets of the original bank without consideration other than the exchange of shares of stock in the new bank and that the successor bank and its successors took over the assets of the original bank and continued its business with full knowledge of the equity of the Williams estate in said sixty-seven shares, which implies that no provision was made therefor and that the respective successor banks did not issue to any one stock representing this outstanding valid certificate of which they had knowledge, and on these facts it is claimed that it was the duty of the successor bank to issue to the Williams estate a proportionate number of shares of stock and to hold them and the dividends declared thereon for its benefit. It is then alleged that the several successor banks became by operation of law trustees for the Williams estate to the extent of said sixty-seven shares and the profits and dividends accruing thereon and that the trusts were never repudiated, and that the right of the Williams estate to receive dividends from the successor banks was subject to the receipt by the Williams estate of shares of the capital stock of the respective banks in place of the shares of the original bank represented by said certificate and that it never received any shares of the successor banks and they received and retained the dividends thereon

and on said certificate, to which dividends the Williams estate was entitled, in the capacity of agents, trustees or fiduciaries for the Williams estate. It is conceded that the provisions of the Revised Statutes (Pt. 1, chap. 18, tit. 3, §§ 9, 10; 1 R. S. 600, § 9; 1 R. S. 601, § 10) regulated the closing of the affairs of the original bank. Those provisions are as follows:

" § 9. Upon the dissolution of any corporation created or to be created, and unless other persons shall be appointed by the Legislature, or by some court of competent authority, the directors or managers of the affairs of such corporation at the time of its dissolution, by whatever name they may be known in law, shall be the trustees of the creditors and stockholders of the corporation dissolved, and shall have full power to settle the affairs of the corporation, collect and pay the outstanding debts, and divide among the stockholders the monies and other property that shall remain, after the payment of debts and necessary expenses.

" § 10. The persons so constituted trustees, shall have authority to sue for and recover, the debts and property of the dissolved corporation, by the name of the trustees of such corporation, describing it by its corporate name, and shall be jointly and severally responsible to the creditors and stockholders of such corporation, to the extent of its property and effects that shall come into their hands."

Plaintiff's cause of action proceeds upon the theory that the successor to the original bank was incorporated by the officers and directors of the former bank for the purpose of taking over the assets and business and continuing it and that it took title and accrued dividends subject to an obligation to issue its stock in exchange for the stock of the original bank and to account for the dividends received and that thereby it became a trustee for the stockholders of the original bank and obligated to them to issue its capital stock in exchange for theirs and to pay the accrued dividends, and in default thereof, at the election of the stockholders, it held the assets subject to their claims for the value of their stock and the dividends, and since it is alleged that the assets of the former bank were so taken over subject to the obligation to issue stock in exchange for the outstanding stock of the former bank and with full knowledge that the certificate of stock in question was outstanding and owned by the Williams estate and did

not issue stock in exchange therefor, it is perfectly plain, I think, that were it not for the fact that there was no one in existence who could represent the Williams estate in tendering the surrender of said certificate or making a demand or to whom the cause of action could accrue, these facts would form the basis of some cause of action in favor of the Williams estate against the successor bank. (See *Pollitz* v. *Wabash R. R. Co.*, 207 N. Y. 113; *Oliver* v. *Piatt*, 3 How. [U. S.] 333; *Alden* v. *Wright*, 175 App. Div. 692; *People* v. *National Trust Co.*, 82 N. Y. 283; *Ferris* v. *Van Vechten*, 73 id. 119; *Davis Provision Co.* v. *Fowler Bros., Ltd.*, 20 App. Div. 626; affd., 163 N. Y. 580; *Wilson* v. *Æolian Co.*, 64 App. Div. 337; *Lindemann* v. *Rusk*, 125 Wis. 210; *Jones* v. *Missouri Edison Electric Co.*, 144 Fed. Rep. 765; *Zachra* v. *Mfg. Co.*, 179 Mo. App. 683; *Harbison-Walker Refractories Co.* v. *McFarland*, 156 Ky. 44.) If it were probable that the Statute of Limitations did not run against any cause of action in behalf of the estate before the executor died and that there was no laches on the part of the beneficiaries which will preclude a recovery for their benefit, we might deem it advisable to discuss the various theories on which the plaintiff claims to be entitled to relief and to express an opinion with respect to the precise relief to which he will be entitled, but, in the circumstances, we deem it sufficient to hold that if the facts are as alleged in the complaint and reply, a cause of action for some relief against the defendant, who is charged with having received a proportionate interest of the Williams estate in the assets of the original bank without having parted with any consideration therefor to said estate and with full knowledge that the estate held this outstanding certificate of stock in the original bank and had received no stock from any of the successor banks in exchange therefor and had received none of the dividends declared by the original and successor banks applicable thereto, is sufficiently shown and, therefore, the demurrer was properly overruled.

It follows that the order should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., DOWLING, PAGE and MERRELL, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.